IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR BAKER COUNTY, FLORIDA
CIVIL DIVISION

TAMMY SMITH,

    Plaintiff,

vs.                                                                 CASE NO.:2020-CA-

WAL-MART INC., a Foreign profit
corporation,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, TAMMY SMITH ("Plaintiff"), by and through undersigned counsel, hereby files this Complaint against Defendant, WAL-MART INC. ("Defendant") and alleges:

### NATURE OF THE ACTION

1. This is an action brought under §440.205, Florida Statutes.

2. This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes.

3. Plaintiff brings this claim for disability discrimination against Defendant for its unlawful termination of Plaintiff based upon her disability or "perceived disability," in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA") and for gender discrimination in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1).

4. This is an action for damages that exceeds the sum of THIRTY THOUSAND DOLLARS ($30,000.00), exclusive of costs, interest and attorneys' fees. Plaintiff has entered "$30,001" in the civil cover sheet for the "estimated amount of the claim" as required in the

preamble to the civil cover sheet for jurisdictional purposes only. The actual value of Plaintiff's claim will be determined by a fair and just jury in accordance with Article 1, Section 21, Fla. Const.

## THE PARTIES

5. Venue is proper as the acts and omissions giving rise to Plaintiff's claims occurred in Baker County, Florida.

6. At all times pertinent, Plaintiff, TAMMY SMITH, is a resident of Baker County, Florida and was employed by Defendant, as an Order Filler, from on or around November 13, 2018 up to her unlawful termination on August 24, 2019. Plaintiff is a member of a protected class.

7. At all times material to this action Defendant, WAL-MART INC., was and continues to be a Foreign for profit-corporation operating as a distribution center. Specifically, Defendant operates at 2686 Commerce Road, Maccleny, Florida 32063.

## TITLE VII / PDA / ADA/ FCRA STATUTORY PREREQUISITES

8. Plaintiff is a female "person" who suffered discrimination based on her disability, or "perceived disability" as well as her gender. As such she is a member of a class of individuals protected by Title VII, the PDA, the ADA and the FCRA.

9. Plaintiff was qualified for her position of employment.

10. Plaintiff suffered an adverse effect upon her employment by being terminated by Defendant with the motivating or determinative factor used by Defendant in the decision making process being Plaintiff's disability, gender, need for accommodation, or related medical condition(s).

11. Plaintiff suffered from differential application of work or disciplinary rules because Defendant treated Plaintiff differently on the basis of Plaintiff's protected class.

12. The Defendant meets the statutory criteria for coverage as an "employer" under Title VII, the PDA, the ADA and the FCRA.

13. Plaintiff meets the statutory criteria for coverage as an "employee" under Title VII, the PDA, the ADA, and the FCRA.

14. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 26, 2019 which is within 300 days of the last date of Defendant's alleged discriminatory and retaliatory conduct. Plaintiff was issued a right-to-sue letter by the EEOC on September 2, 2020, and which was received by Plaintiff on September 19, 2020. Therefore this complaint is being filed within 90 days of receiving her right to sue letter.

15. Accordingly Plaintiff has completed all other Title VII, the PDA, the ADA and the FCRA requirements and all other prerequisites prior to bringing this lawsuit.

16. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

**STATEMENT OF FACTS**

17. On or about April 6, 2019, Plaintiff injured her back when she fell while lifting and moving pallets while on the job. Plaintiff's injuries included displaced spinal cord, fractured L5, sacrum bone and coccyx bone, and 5% permanent injury to her back. The work being performed at the time of her injury was part of her normal duties and happened while working for Defendant.

18. Plaintiff notified Defendant of her workplace injury. Instead of sending Plaintiff to the emergency room, Dean Leonard, Main Ops Manager, Jerrod Chapman, Plaintiff's

Manager and Shannon Stacey, Human Resource Representative, googled Plaintiff's symptoms and diagnosed her with a bruised tailbone. With their newly acquired WebMD diagnosis, they told Plaintiff to get back to work. Plaintiff could not walk because she was in so much pain. Plaintiff had to leave early that day because the pain was unbearable. Instead of caring for the health and wellbeing of Plaintiff, and leaving the diagnosis to a medical professional, Defendant, more specifically, Jerrod Chapman wrote Plaintiff up, giving her a point for leaving early.

19. On or about April 8, 2019, Plaintiff sought the medical care to which she was entitled pursuant to Florida Workers' Compensation law.

20. Plaintiff informed Defendant of her medical restrictions.

21. Plaintiff's doctor cleared her to return to work with certain light duty restrictions on April 13, 2019. Specifically, following her return to work, Plaintiff was prohibited from bending, pulling and lifting anything. With full knowledge of her broken back and the physician's orders, Mr. Chapman assigned "light duty" to Plaintiff which was cleaning duty, to include but not limited to sweeping and painting poles in a -10 degree freezer. To add insult to injury, again, instead of caring for the wellbeing of their employee, Defendant's supervisors advised Plaintiff that neither they nor worker's comp would pay for her emergency room visit.

22. On or about April 18, 2019, Defendant's employees took Plaintiff to Care Spot for a worker's comp evaluation. It was not until Plaintiff saw Defendant's doctor that Defendant's supervisors accommodated Plaintiff with her physician's orders and placed her in Quality Assurance upon her return to work.

23. Plaintiff was to return to work three days later, on April 21, 2019, however, she was in so much pain from performing Mr. Chapman's "light duty" that she could not get out of bed. Plaintiff was issued 2 points.

24. After three visits to Care Spot, Plaintiff was referred to another one of Defendant's doctors, Dr. Rogozinski, who practices with Rogozinski Orthopedic Clinic. On or about May 20, 2019, Plaintiff was unable to work due to the pain she was having from her work related injury. Instead of working with Plaintiff, Mr. Chapman wrote her up again, issuing her 1 point.

25. On or about May 25, 2019, Plaintiff was 0:03 minutes late for work. Again, Mr. Chapman wrote up Plaintiff and issued her a half point for being 0:03 minutes late. He gave no credence to Plaintiff's debilitating condition as a factor in her 3 second tardiness. Other, non-injured employees were allowed to be 3 seconds late.

26. On or about June 28, 2019 Plaintiff was released to return to work and perform the essential elements of her position.

27. Plaintiff worked the first two weeks of July 2019 without issue.

28. On or about July 13, 2019 Plaintiff re-injured her back.

29. Plaintiff notified Defendant of her workplace injury. Plaintiff sought the medical care to which she was entitled pursuant to the Florida Workers' Compensation law. Plaintiff was in debilitating pain and had to leave work early. Even though Plaintiff was approved for PTO for her time missed that day, the Defendant saw it fit to write her up for leaving work early and issued her yet another point.

30. On or about July 20, 2019, the worker's comp doctor released Plaintiff to work with certain light duty restrictions.

31. On or about August 5, 2019, Plaintiff took off from work due to her work related injury, and once again, the Defendant issued her another point, even though she had approved PTO for her time off.

32. On or about August 11, 2019, Plaintiff was out due to her work related injury, and once again, the Defendant issued her another point.

33. On or about August 17, 2019, David Reed, Ops Manager for Meats and Produce, told Plaintiff if she did not come into work he would hold her accountable. Even though Plaintiff was in severe pain, she went to work, but had to leave due to the unbearable pain. Mr. Reed wrote her up and issued her a point for leaving.

34. On or about August 19, 2019, Plaintiff went to see Matt (lnu) in HR to see what could be done about her points. Matt (lnu) advised her that "[i]f you hadn't filed worker's comp we would have worked with you on your points."

35. On August 24, 2019, Plaintiff was terminated for excessive points.

36. On August 25, 2019, the day after her termination, Plaintiff was issued 3 points.

37. Florida Statute §440.205 states in pertinent part that:

> **"No employers shall discharge, threaten to discharge, intimidate, or coerce any employee by reasons of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law."**

38. Defendant terminated Plaintiff for exercising her rights under the Florida Workers' Compensation law.

39. Prior to her injury, Plaintiff had a total of 1.5 points. After her getting injured on the job and validly filing her worker's comp claim, she received a total of 12 points.

40. Defendant's actions were willful and/or in reckless disregard of the laws and cited herein.

41. Plaintiff has retained the undersigned and owes a fee to the same relating to this matter. Plaintiff will seek attorney's fees and costs from Defendant in this matter.

## COUNT I – VIOLATION OF FLORIDA STATUTE §440.205 RETALIATION FOR PURSUING A CLAIM UNDER WORKERS' COMPENSATION LAW

42. Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 41 as though fully set forth herein.

43. The Defendant intentionally intimidated and coerced Plaintiff after she was injured on the job, sought medical attention, and filed a valid claim for worker's compensation.

44. Plaintiff was intimidated, coerced, and discharged by reason of Plaintiff's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law of the State of Florida, said intimidation, coercion, and discharge being in direct violation of Section §440.205, Florida Statutes.

45. As a result of said intimidation, coercion, and discharge, Plaintiff has suffered damages, including but not limited to loss of earnings, loss of ability to earn money, and mental anguish. The losses have occurred in the past and will continue in the future.

## COUNT II – DISCRIMINATION: Chapter 760

46. Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 41 as though fully set forth herein.

47. This is an action against Defendant for discrimination based upon gender and/or disability brought under Chapter 760, Florida Statutes.

48. Plaintiff has been the victim of discrimination on the basis of Plaintiff's gender and/or disability in that Plaintiff was treated differently than similarly situated employees of Defendant who are males and/or non-injured, has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's gender and/or disability.

49. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff

or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

50. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

51. Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

52. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a gender-based and/or disability based nature and in violation of the laws set forth herein.

53. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein led, at least in part, to Plaintiff's termination.

54. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender and/or disability in violation of Chapter 760, Florida Statutes.

55. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## COUNT III – RETALIATION: Chapter 760

56. Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 41 as though fully set forth herein.

57. Defendant is an employer as that term is used under the applicable statutes referenced above.

58. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting Plaintiff under Chapter 760, Florida Statutes, and other statutory provisions cited herein.

59. The foregoing unlawful actions by Defendant were purposeful.

60. Plaintiff voiced opposition to unlawful employment practices during Plaintiff's employment with Defendant and/or engaged in protected activity and was the victim of retaliation thereafter, as related in part above.

61. Plaintiff is a member of a protected class because Plaintiff reported unlawful employment practices and/or requested reasonable accommodations and was the victim of retaliation thereafter. There is thus a causal connection between the protected activity and the adverse employment action taken thereafter.

62. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to punitive damages and to injunctive relief.

## COUNT IV – VIOLATIONS OF AMERICANS WITH DISABILITY ACT

63. Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 41 as though fully set forth herein.

64. Plaintiff suffers from a disability as defined by the ADA.

65. Plaintiff is protected by the ADA because:

   a. Plaintiff was a disabled or "perceived as disabled" employee who suffered discrimination because of her disability or "perceived disability" by Defendant; and
   b. Plaintiff suffered an adverse employment action as a result of her disability or "perceived disability."

66. Defendant was at all material times an "employer" as envisioned and defined by the ADA.

67. Defendant saw Plaintiff's disability as an opportunity to get rid of an employee because it perceived/regarded her as disabled and/or based on her disability.

68. Plaintiff's medical condition is a protected disability under the ADA. See 42 U.S.C. § 12102.

69. Defendant's actions unquestionably constitute disability discrimination in violation of the ADA.

70. The ADA requires an employer to provide its ADA protected employees with a reasonable accommodation unless doing so would impose an undue hardship.

71. This accommodation requirement includes providing an employee an opportunity to work light duty associated with her disability.

72. Instead of accommodating Plaintiff's request, as the law requires, Defendant discarded a loyal and highly productive employee because it decided that the protective provisions of the ADA could be casually disregarded.

73. Given the timing and circumstances leading to Plaintiff's termination, Defendant's actions unquestionably constitute disability discrimination in violation of the ADA.

74. Plaintiff is an individual who, with minimal accommodation, was fully capable of performing the essential functions of her job.

75. By reason of the foregoing, Defendant's actions, and non-actions, affected the "terms, conditions or privileges" of Plaintiff's employment as envisioned by the ADA.

76. Alternatively, Defendant perceived Plaintiff as being "disabled," and therefore, unable to perform the essential functions of her position, despite the fact that Plaintiff could perform same with a reasonable accommodation.

77. Pleading in the alternative, Plaintiff's impairment did not substantially limit a major life activity, but was treated by Defendant as if it did.

78. Pleading in the alternative, Plaintiff's medical condition constituted an impairment that limited a major life activity only because of Defendant's attitude toward the impairment.

79. Defendant does not have a non-discriminatory rationale for terminating Plaintiff's employment.

80. Plaintiff was a disabled individual, or otherwise perceived as disabled by Defendant, during her employment. Therefore, she is the member of protected classes as envisioned by the ADA.

81. Plaintiff suffered sufficiently severe and pervasive treatment, and ultimate termination, because of her disability and/or "perceived disability," and request for accommodation regarding same.

82. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination/harassment under the ADA.

83. The discrimination to which Plaintiff was subjected was based on her disability and/or "perceived disability."

84. The conduct of Defendant, its agents, and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

85. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant to deter it, and others, from such conduct in the future.

86. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to the ADA.

87. Plaintiff has retained the undersigned to represent Plaintiff in the litigation and has agreed to pay the firm a reasonable fee for its services.

**COUNT V – RETALIATION UNDER THE ADAAA**

88. Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 41 as though fully set forth herein.

89. Plaintiff was a qualified individual with a disability recognized under the ADAAA.

90. Plaintiff was perceived as disabled by Defendant.

91. Defendant was Plaintiff's employer as defined by the ADAAA.

92. Defendant retaliated against Plaintiff because of her request for a reasonable accommodation in violation of the ADAAA.

93. Defendant retaliated against Plaintiff because she exercised her rights under the ADAAA by notifying Defendants of her need for a work accommodation related to her disability.

94. Defendant had actual or constructive knowledge of the retaliatory conduct.

95. Defendant's acts and omissions negatively affected one or more terms, conditions and/or privileges of Plaintiff's employment.

96. Defendant's conduct violated Plaintiff's right to be free from retaliation as guaranteed by the ADAAA.

97. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused and continue to cause irreparable harm.

98. Defendant's violations of the ADAAA were willful or in reckless disregard of the tenets of the same.

99. Plaintiff is entitled to recover his attorneys' fees and costs pursuant to the ADAAA.

**COUNT VI – HOSTILE WORK ENVIRONMENT UNDER THE ADAAA**

100. Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 41 as though fully set forth herein.

101. Plaintiff is member of protected class due to her disability.

102. Based on the described conduct above, Plaintiff was subjected to a hostile work environment based upon her disability.

103. The above described conduct was not welcomed by Plaintiff and was motivated by Plaintiff's disability.

104. The conduct was so severe and pervasive that a reasonable person would find the environment to be hostile and unwelcoming.

105. Plaintiff's wages and benefits were impacted and Plaintiff's standing amongst her co-workers was adversely impacted due to the pervasive and severe conduct by Defendant and its agents.

106. Defendant knew or should have known of the hostile work environment.

107. The above hostile workplace environment was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the environment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

**COUNT VII – VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

108. Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 41 as though fully set forth herein.

109. Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1), by terminating Plaintiff because of sex.

110. Defendant's decision to terminate Plaintiff was based on sex. Defendant fired Plaintiff because she is a female and/or because Defendant's systemic gender-based preferences, expectations, or stereotypes resulting in more favorable treatment of males.

111. The effect of Defendant's unlawful employment practices was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee, because of her sex.

112. Defendant's unlawful employment practices were intentional and done with malice or with reckless indifference to Plaintiff's rights under Title VII.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, TAMMY SMITH, demands judgment against Defendant, WAL-MART INC., and requests this Court award damages including:

a. Compensatory Damages for pain, suffering, mental anguish, loss of enjoyment of life; and

b. Compensation for lost wages, benefits and other remuneration; and

c. Punitive damages; and

d. Reasonable attorneys' fees and costs; and

e. Any other relief deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 23rd day of November, 2020.

Respectfully submitted,

s/ Thomas L. Dickens, III
Thomas L. Dickens, III
Florida Bar No.: 63867
Morgan & Morgan, P.A.
20 N. Orange Ave., 14th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Direct Tel.:    (407) 418 2042
Facsimile:     (407) 245-3354
Email: tdickens@forthepeople.com
Secondary Email: mfermaint@forthepeople.com